## PAN AMERICAN FINANCE CO., Inc. v. STATE COMPTROLLER.

Circuit Court, Dade County.

October 23, 1957.

Arthur G. Gottlieb, William Feldman and F. E. Gotthardt, all of Miami, for plaintiff.

Phillip Goldman, Miami, for defendant.

ROBERT H. ANDERSON, Circuit Judge.

This is a proceeding brought by Pan American Finance Co., Inc. under section 516.25, Florida Statutes, to review an order dated August 5, 1957, whereby the state comptroller, acting under section 516.07, Florida Statutes, revoked the plaintiff's license to conduct a small loan business in Dade County.

The comptroller's action was based solely upon a decree of the circuit court of Dade County made on July 16, 1957 in the case of Pan American Finance Co., Inc. v. James D. Tucker and wife (#192776). This was an interlocutory order setting aside a summary final decree which had theretofore been entered in favor of the plaintiff in the case. In making the order the court found —

"that the uncontradicted testimony and evidence discloses that the execution of the mortgage and note sought to be foreclosed in this action was procured by fraud, and that the purported signature of the defendant, Inell Tucker, on the note and mortgage is a forgery, and, therefore, the mortgage and note are null and void as to the defendant, Inell Tucker, and the said mortgage is null and void as to both defendants, James D. Tucker and Inell Tucker, his wife."

The comptroller construed this order to be a holding that the Pan American Finance Co. had been guilty of the fraud perpetrated in the procurement of the mortgage and committed the forgery, in which he was perhaps justified. Upon the rendition of his order revoking its license, Pan American filed this proceeding and requested an immediate reinstatement of its license pending determination of the cause. This the court declined to do, but on the contrary made an order denying the comptroller's motion to dismiss and providing that there should be no further hearings in this matter until such time as the circuit judge having jurisdiction ruled in the case of Pan American Finance Co., Inc. v. James D. Tucker, et ux. Final hearing at that time had been set for August 29th. The court made this order because it felt that it did not have the power to overrule another circuit judge, and certainly had no disposition to do so.

The case of Pan American Finance Co. v. Tucker has now been finally heard. The court, on October 15, 1957, entered a final decree in which it found that the mortgage and note sought to be foreclosed were procured from the defendant, James D. Tucker, without his knowledge that the said instrument constituted a lien upon the property owned by him and his wife, and the purported signature of Inell Tucker on the note and mortgage was a forgery and not genuine and therefore the mortgage and note were null and void as to the defendant, Inell Tucker, and the mortgage was null and void as to both defendants; whereupon the complaint seeking foreclosure was dismissed.

As above stated, this proceeding was brought under section 516.25, Florida Statutes. That section provides—*"Proceeding for review.*—In addition to any other remedy he may have, any licensee and any person considering himself aggrieved by any action of the licensing official hereunder may, within thirty days from the entry of the order complained of, or within sixty days of the action complained of if there is no order, bring an action in the circuit court of the county in which the licensed place of business is located *to review* such action. In such action the proceedings shall be, in all respects, *de novo.* In such action the record, transcript, evidence, findings, and order of the licensing official shall be admissible as evidence." (Italics added.)

The court is in some doubt as to the meaning of this language. It seems clear that it is a proceeding *to review* the comptroller's action and is not a *trial* de novo. On the other hand, the words "de novo" must be given some effect, but they cannot be tortured into putting the burden on the comptroller to sustain his order. The court prefers to adopt the suggestion of the Attorney General—"Here,

under a review de novo as described in the statute it would seem that the plaintiff would be free to put in such additional evidence as meets the standards of admissibility—a privilege afforded him. However, there is nothing in any of the authorities cited with respect to a trial de novo which calls for a shifting of the burden of proof from the plaintiff to the defendant comptroller," and proceed upon the theory that all relevant evidence is admissible, but the burden is on the Pan American Finance Co. to show that the comptroller's ruling was erroneous.

The court, of course, takes judicial notice of the proceedings in Pan American Finance Co. v. Tucker. It has examined the file. From this examination it appears that Herman V. Bennett, an examiner of questioned documents, testified in behalf of the plaintiff that in his opinion the name of Inell Tucker was printed on the note and mortgage sought to be foreclosed by her husband, James D. Tucker. Counsel for the Tuckers admitted that the court did not find fraud on the part of Pan American Finance Co. The court stated that Mr. Feldman, Pan American's attorney, called in reference to the order and he was told that there was nothing in it holding that Pan American was the one who perpetrated the fraud, but the inference was that they were the perpetrators of it since they were a party to it, and they must have had some information as to how the mortgage was procured. The court further stated that it was not concerned with the Pan American Finance Co. nor the ruling of the comptroller; it was concerned with only one thing, that is, whether or not there was fraud in the execution or procurement of execution of the mortgage. The witness who took the acknowledgment to the mortgage said she worked for Federal Finance Company and that she did not know anyone connected with Pan American Finance Co. and never had any dealings with them at all. A Mrs. Cinnili testified that she was employed in February, 1956 by Pan American Finance Co. and signed the mortgage and saw Tucker sign the mortgage and witnessed his signature to it. She said that she was presently working for Eastern Properties and none of the officers or directors of that company had any interest in Pan American Finance Co. Inell Tucker categorically denied having signed the mortgage.

At the conclusion of the hearing the court stated that it had heard nothing that had changed its mind about the execution of the document (mortgage). In response to a query from counsel, "You are not identifying the fraud?" the court said—

"I have already made that statement. I said that before this hearing began.

"No one has placed Mr. Gottlieb or any officer of the Pan American Finance Company as the one who actually perpetrated the fraud, which, I think, was committed by someone; but I feel that this mortgage was improper; that James Tucker had no intention of mortgaging his home to pay for that automobile.

"I am not going to change my ruling in this case one bit."

And further—

"Let me say that I will make this clarification; that I have not found that, but the inference points to someone connected with it or related to them must have had something to do with it, because things just do not happen.

"Someone off the street does not go and pick up someone and take them in to the office of Pan American Finance Company."

And again—

"In my previous ruling, Tucker was, in my opinion, obligated to pay the note, but it is my opinion that he did not know that he was signing a mortgage. I believe that Tucker signed his wife's name on the mortgage, after the testimony of this handwriting expert."

In response to an inquiry of counsel "You might say, then, Your Honor, by inference, that fraud, or whatever we might call it, was not ascribed to Pan American; that Tucker did that; that Pan American should then be chastened for it," the court said—

"I do not know, but someone, maybe some unscrupulous used car salesman, has been working close with them and was actually the instigator and perpetrator of this fraud. I do not know.

"I am not going to sit here and try to write out or spell out the plan or the course of conduct of the comptroller. If the comptroller misconstrued my order, then I cannot help it."

By counsel—

"I will assume, in view of Your Honor's remarks, the case is ready for a final decree. Is that correct?"

The court—

"Ready for a final decree in that the mortgage was perpetrated by fraud; or procured by fraud; that Inell Tucker did not sign the mortgage. The mortgage is invalid as to her. James D. Tucker did not know he was signing a mortgage, but

thought that he was signing a note to enable him to purchase an automobile."

And further, the court—

"If you want to force me to do it, I am liable to hurt your client, Mr. Gotthardt."

Mr. Gotthardt—

"I am not trying to force you."

The court—

"I am trying to avoid saying that because of the statement of Mr. Feldman, because I did not say Pan American was actually the one or the officers of the corporation who perpetrated the fraud.

"I see no reason to change it. It points that way; at least, by inference, because they are the beneficiaries of the fraud."

And further, the court—

"I see no reason to change it (the decree). I think I have spelled it out fairly clear what my findings are in this case.

"I cannot very well set aside the mortgage without mentioning fraud incident to the execution of it. I cannot sweeten this thing up to satisfy your client, Mr. Gotthardt."

And further, the court—

"I am not changing my ruling to make it lighter for anybody connected with this.

"I am not concerned about Pan American or the comptroller's ruling.

"I am concerned about seeing that justice is done and that this mortgage be set aside."

It is obvious that the comptroller based his order of revocation of the license of Pan American Finance Co. upon the interlocutory order of the circuit court of Dade County of July 16, 1957. It is equally obvious that this order contained no finding that the mortgage was procured by fraud of Pan American Finance Co. or anyone acting for it or that the forgery was committed by Pan American Finance Co. Indeed, the court in its final decree refrained from making any such finding. Chancellor Kent aptly observed that fraud was so easy to infer and so difficult to prove.

In all the circumstances, the order of revocation of the comptroller is invalid, and the Honorable Ray E. Green, as comptroller of

the state of Florida, is directed to reinstate the license of Pan American Finance Co., Inc. to operate a small loan business in Dade County. In so holding this court is not overruling another circuit judge: it is upholding his decree.